IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 0:21-cv-60841

MJ CAPITAL FUNDING, LLC,

    Plaintiff,

v.

JOHN DOE owner/registrant of
www.mjcapitalfundss.com,

    Defendant.

## COMPLAINT

Plaintiff MJ Capital Funding, LLC ("Plaintiff") sues defendant John Doe ("Defendant"), and alleges as follows:

## THE PARTIES

1. Plaintiff is a limited liability company organized and existing under the laws of the State of Florida with its principal place of business located in Broward County, Florida. All members of Plaintiff are individuals who are citizens of Florida and no other State.

2. Defendant is believed to be an individual using the alias "Johnathan Aaronson" or "Johnathan Aaronso" (neither of which appear to be Defendant's actual name) who is a citizen of the organized and existing under the laws of the State of Pennsylvania with its principal place of business located at 400 E. Station Ave., #225, Coopersburg, PA 18036.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Plaintiff's claims arising under state law pursuant to 28 U.S.C. § 1367(a).

4. This Court has jurisdiction over Defendant because Defendant has maintained sufficient minimum contacts with Florida such that the exercise of personal jurisdiction over Defendant would not offend traditional notions of fair play and substantial justice.  Further, as set forth herein, Defendant purposefully directed disparaging statements to the State of Florida by making false statements about Plaintiff, a company Defendant knows to be located in Florida.  The effects of these disparaging remarks were clearly felt in the State of Florida, where Plaintiff suffered loss of goodwill, harm to its reputation, and pecuniary loss.

5. Venue properly lies in this district because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

## FACTS

### I. Plaintiff's Business

6. Plaintiff engages in the business of providing merchant cash advances to businesses located in Florida and throughout the United States.  Generally stated, Plaintiff provides funds to small business owners in exchange for a percentage of the business' income over a specified period of time.  The total amount to be repaid is calculated by a factor rate, a multiplier generally based on a business' financial status.

7. Plaintiff was created as a Florida limited liability company on June 10, 2020.

8. On July 29, 2020, Plaintiff registered the domain www.mjcapitalfunds.com and thereafter has utilized an interactive website at such domain to conduct a substantial amount of business.

9. Plaintiff's website provides background information on how Plaintiff can assist small businesses with merchant cash advances and further invites business owners to fill out an online application for funding (in addition to providing other contact methods).

10. Plaintiff's website (together with its other marketing material) prominently displays Plaintiff's logo/service mark:



11. Since its inception, Plaintiff has rapidly developed a loyal customer following in addition to relationships with several key funding partners (who provide investment monies that are then used to provide the subject merchant cash advances).

## II. "mjcapitalfundss.com"

12. On April 10, 2021, Defendant registered the domain www.mjcapitalfundss.com (substantially identical to Plaintiff's website with an additional "s" at the end).

13. Following that date, Defendant published a website on the domain that, on its initial splash page, purports to suggest that Plaintiff is operating a Ponzi scheme through its merchant cash advance business.[1]

14. Defendant's website purports to provide an "investigation into MJ Capital Funding," concluding (without a scintilla of evidence in support) that Plaintiff is operating a "massive" Ponzi scheme and directing consumers to not invest or do business with Plaintiff.

15. Defendant's website goes on to call Plaintiff's merchant cash advance business a "scam" and further states that "my [Defendant] team and I are putting together a group of defrauded investors to file a lawsuit which will then trigger a criminal investigation."

16. The website contains an "About" page which purports to provide information about

---

[1] True and correct copies of the various sub-pages of Defendant's website are attached hereto as Exhibit "A."

the author – "Johnathan Aaronson" who represents himself as a "private citizen journalist who exposes fraudulent business operations."

17.   For the reasons discussed below, "Johnathan Aaronson" appears to be a fake name (corresponding to a fake driver's license that was provided to Plaintiff via e-mail) utilized by the website's author to accomplish an extortion scheme (which, upon information and belief, Plaintiff is not the first victim of).

### III.   Defendant's Attempted Extortion

18.   On or about April 11, 2021, Defendant's website was brought to Plaintiff's attention through communications with a prospective merchant/customer account.

19.   Upon learning of the website, Plaintiff (through Johanna M. Garcia, one of Plaintiff's members) on April 11, 2021 submitted a contact form on the www.mjcapitalfundss.com website which notified the owner thereof that he/she was infringing on Plaintiff's name and disparaging/defaming Plaintiff with the content.  The message further demanded that Defendant take down its website.

20.   On April 13, 2021, Defendant (using the alias "Johnathan Aaronso" – a likely misspelling of Defendant's other alias "Johnathan Aaronson") responded via e-mail to Ms. Garcia by using the e-mail address info@mjcapitalfundss.com.

21.   Defendant responded that all of the allegations on the www.mjcapitalfundss.com website are the truth and that the content of the website is "constitutionally protected 1st amendment exercise."

22.   In subsequent e-mails exchanged between the parties, however, the notion that Defendant is somehow a crusader for justice or a "journalist" was exposed as a sham.

23.   Indeed, when questioned about what (if anything) Defendant was seeking to

remove the website, Defendant quickly responded by demanding payment of "$150,000 for the url" with the main 'deal' points being that Defendant would transfer the domain to Plaintiff and sign a non-disclosure/confidentiality agreement "that will prohibit me from even mentioning your company online or offline for 15 years."

24. For a supposed citizen journalist interested only in exposing purported scams, Defendant jumped at the opportunity to offer his silence in exchange for payment of a ransom.

25. Defendant initially demanded payment via a "crypto wallet" to keep his/her identity a secret.

26. Ultimately, however, Defendant's greed outshone his caution and Defendant provided a method of payment via www.squareup.com (a digital payment company) and later provided a routing/bank account number to accept payment of his/her ransom.

27. Notably, Defendant sent provided an invoice through www.squareup.com in which his/her account is identified as being "TLT Solutions Inc" and routing/bank account information for an account that is identified as being "Dall Web Services."

28. Although Defendant temporarily disabled the subject website while the parties discussed payment of Defendant's ransom, Defendant has threatened to (and is expected to follow through on his threat) reinstate the website given Plaintiff's non-payment.

29. All conditions precedent to this action have been performed or have been waived.

### COUNT I – VIOLATION OF THE ANTI-CYBERSQUATTING CONSUMER PROTECTION ACT (ACPA)

30. Plaintiff re-alleges and incorporates paragraphs 1 through 29 as set forth above.

31. At all times material hereto, Defendant was aware of Plaintiff's existence and that Plaintiff was the owner/operator of www.mjcapitalfunds.com.

32. Defendant has, in bad faith, profited from Plaintiff's name/mark by registering and

operating a domain name (www.mjcapitalfundss.com) that is confusingly similar to that of Plaintiff (adding only an additional "s" at the end of the domain name).

33. Defendant intentionally and in bad faith registered, trafficked in, and used a domain name (www.mjcapitalfundss.com) that is identical or confusingly similar to Plaintiff's registered domain name with the purpose of diverting consumers from Plaintiff's domain and to cause consumers to not do business with Plaintiff.

34. Defendant's bad faith is most obviously evidenced by Defendant's demand for payment of a $150,000.00 ransom for Plaintiff to purchase the subject domain (notwithstanding Defendant's public perception that he is somehow a citizen journalist who registered the domain solely for altruistic reasons).

35. The above-referenced unfair practice of diverting consumers from Plaintiff's domain placed Plaintiff in danger of suffering damages to its business, goodwill, and reputation by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site (especially given that Defendant copies Plaintiff's logo in various areas of his/her website).

36. Indeed, Plaintiff has received no less than 15 – 20 inquiries from merchants, employees, and other persons with respect to the allegations on www.mjcapitalfundss.com and Plaintiff has lost substantial business as a result of Defendant's actions.

**WHEREFORE**, Plaintiff demands judgment against Defendants for forfeiture or cancellation of the www.mjcapitalfundss.com domain or transfer of same to Plaintiff pursuant to 15 U.S.C. § 1125(d)(1)(C), compensatory damages (or statutory damages under 15 U.S.C. § 1117(d) if so elected by Plaintiff), preliminary and permanent injunctive relief, costs and reasonable attorneys' fees, and such other relief as the Court deems just and proper.

## COUNT TWO: DEFAMATION/BUSINESS DISPARAGEMENT

37. Plaintiff re-alleges and incorporates paragraphs 1 through 29 as set forth above.

38. As set forth more fully above, Defendant has made numerous defamatory and disparaging statements about Plaintiff through publication of www.mjcapitalfundss.com.  As set forth above, Defendant has stated that Plaintiff is operating a Ponzi scheme, that Plaintiff is a "scam," that Defendant has been contacted by numerous disgruntled investors, etc.

39. These statements were false when made.  Plaintiff maintains a small number of investors, all of which are extraordinarily satisfied/happy with their investment to date.

40. Plaintiff does not operate a Ponzi scheme or offer 'guaranteed' returns on investment as suggested by Defendant.

41. Plaintiff enters into written contractual agreements with both its investors and the merchants receiving cash advances – the investors receive a satisfactory return on their investment and the merchants receive needed financing for their operations.

42. Notably, the terms of these agreements are not discussed anywhere on Plaintiff's website, leading to the conclusion that Defendant is himself a disgruntled former employee of Plaintiff or someone who is in actuality working for one of Plaintiff's competitors to divert business away (or both).

43. Defendant knew the aforementioned statements were false at the time they were made.

44. As a direct and proximate result of Defendant's actions, Plaintiff suffered substantial damages, including but not limited to lost profits from merchants/investors who were steered away from doing business with Plaintiff as a result of Defendant's lies.  Indeed, Defendant appears to have paid for search engine optimization/Google Ad-words to place his/her website first

or high up in the search results when individuals search for Plaintiff's site. This has resulted in at least 15 – 20 merchants, investors, and/or employees reaching out to Plaintiff to express concern regarding Defendant's lies.

45. In conducting such acts, Defendant acted with malice or disregard for Plaintiff's rights; therefore, Plaintiff is entitled to punitive damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant for compensatory damages, punitive damages, preliminary and permanent injunctive relief, an award of costs, and such other relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury on all issues so triable.

Dated: April 19, 2021.

DESOUZA LAW, P.A.
3111 N. University Drive
Suite 301
Coral Springs, FL 33065
Telephone: (954) 603-1340
DDesouza@desouzalaw.com

By: /s/ Daniel DeSouza, Esq._____
Daniel DeSouza, Esq.
Florida Bar No.: 19291

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 19, 2021, I electronically filed the foregoing document with the Clerk of the Court using the Florida E-Filing Portal.

DESOUZA LAW, P.A.

By: /s/ Daniel DeSouza, Esq._____
Daniel DeSouza, Esq.

4820-2145-5458, v. 1